IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | Case No. 8:25-cv-00926-PX |
| | * | |
| v. | * | |
| | * | |
| Reliant Fire Protection, LLC, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \*

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Entry of Default Judgment ("Motion") (ECF No. 13) filed by Plaintiffs Trustees of the National Automatic Sprinkler Industry Welfare Fund, National Automatic Sprinkler Local 669 UA Education Fund, National Automatic Sprinkler Industry Pension Fund, Sprinkler Industry Supplemental Pension Fund, the International Training Fund, and Road Sprinkler Fitters Local Union 669 Work Assessments, Extended Benefit Fund and Industry Advancement Fund (collectively, the "Funds"). The Funds filed this action against Defendants Reliant Fire Protection LLC ("Reliant") and Jeffrey W. Curtis ("Curtis"). Defendants have not responded to the Motion, and the time for doing so has passed. *See* Loc. R. 105.2(a). On April 3, 2026, in accordance with 28 U.S.C. § 636 and pursuant to Local Rule 301.6(al), Judge Xinis referred this case to me for a report and recommendation on the Funds' Motion. ECF No. 14. I find that a hearing is unnecessary. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that the Funds' Motion be granted.

## I.      FACTUAL AND PROCEDURAL HISTORY

In this case, the Funds filed suit against Defendants under the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a), to recover amounts owed to the Funds under a Collective Bargaining Agreement ("CBA"). ECF No. 1. Defendants were served with process, *see* ECF Nos. 7 & 8, but they did not answer or otherwise respond to the Complaint by the pleading deadline. *See* Fed. R. Civ. P. 12(a)(1)(A). On July 3, 2025, the Funds moved for the Clerk's entry of default (ECF No. 9), and the Clerk entered default against Defendants on July 8, 2025 (ECF No. 10). The Clerk sent Defendants notice of the default, but Defendants have not moved to vacate the default. ECF Nos. 11 & 12. And Defendants have not responded to the Funds' Motion for Default Judgment (ECF No. 13), which is ripe for decision.[1]

## II.     LEGAL ANALYSIS

### A.      Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *Ryan*, 253 F.3d at 780. Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States*

---

[1] Pursuant to the Servicemembers' Civil Relief Act ("SCRA"), before the Court may enter a default judgment in favor of a plaintiff, the plaintiff must file an affidavit "stating whether or not the defendant is in military service and showing necessary facts to support the affidavit[.]" 50 U.S.C. § 3931(b)(1)(A). This requirement does not apply to Reliant because it is business entity. And the Funds have provided evidence that Curtis is not a member of the military or military reserves in active service. ECF No. 13-2.

*v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151, at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2010). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages and may rely on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g., Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

## B.    Liability

ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. ERISA further

3

provides that employers who fail to make timely contributions are liable in a civil action for unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs, and any other relief the Court deems appropriate. 29 U.S.C. § 1132(a), (g).

The following facts are taken from the Complaint (ECF No. 1) the Funds' Memorandum in support of their Motion (ECF No. 13-1), and the exhibits attached to the Memorandum. The Funds allege that they are multiemployer employee pension benefit plans within the meaning of 29 U.S.C. § 1002(3). ECF No. 1 ¶ 2. The Funds are established and maintained pursuant to the provisions of the Restated Agreements and Declarations of Trust ("Trust Agreements") and the CBA between Road Sprinkler Fitters Local Union No. 669 ("the union") and Reliant. *Id.*

On December 30, 2021, Reliant entered into an Agreement to be bound by the terms and conditions of the CBA (ECF Nos. 13-6 & 13-7) between the National Fire Sprinkler Association ("NFSA") and the union. ECF No. 13-5. Under the CBA, Reliant was required to submit reports and pay contributions to the Funds for each hour of work by journeymen and apprentice sprinkler fitters employed by Reliant from the date of the Agreement through March 31, 2025. *See* ECF No. 13-4 at 1-2.

Under the CBA, Reliant was also bound to the Trust Agreements. *Id.*; ECF Nos. 13-8, 13-9, 13-10, 13-11 & 13-12. Among other things, the Trust Agreements provide that the Trustees of the Funds may adopt rules and procedures concerning payments to the Funds, audits, liquidated damages, and to enforce the collection of delinquent contributions. ECF No. 13-4 at 2. Under the authority delegated to them by the Trust Agreements, the Trustees of the Funds adopted the Guidelines for Participation in the Sprinkler Industry Trust Funds ("Guidelines"). *Id.*; ECF No. 13-13. A copy of the Guidelines was mailed to Reliant, along with a letter explaining their purpose. ECF No. 13-4 at 2.

Reliant employed certain employees covered by the CBA between May 2022 and February 2025. ECF No. 13-4 at 2. Although it was bound to contribute to the Funds for its covered employees, Reliant experienced "substantial difficulty" in doing so. ECF No. 1 at 3. In response to Reliant's difficulties making its required contributions, the Funds entered into a Settlement Agreement and Promissory Note with Reliant, which allowed Reliant to make its past-due payments over time. *Id.* The Settlement Agreement required Reliant to pay the principal amount of $318,613.60 to the Funds over a period of 36 months. ECF No. 13-4 at 3. In addition, the agreement required Reliant to remain current in its future contributions to the Funds for the duration of the 36-month period, and to file its monthly report forms and payments on time, beginning with the reports and payments owed for the month of May 2024. *Id.* The Settlement Agreement waived the liquidated damages that the Funds were entitled to (in the amount of $104,522.82), but this waiver was contingent on Reliant's compliance with the Settlement Agreement. *Id.* If Reliant defaulted on the Settlement Agreement, the Funds were permitted to reinstate the liquidated damages and declare the entire unpaid principal and liquidated damages immediately due. *Id.* Curtis, the President and managing member of Reliant, executed the settlement documents on behalf of Reliant and as a personal guarantor for all amounts owed by Reliant to the Funds, including future contributions owed to the Funds for the duration of the settlement. *Id.* Reliant and Curtis are jointly and severally liable for amounts owed under the settlement agreement. *Id.*

Reliant defaulted on the terms of the settlement. *Id.* It made only eight of the required settlement payments and it failed to remain current in the payment of its monthly contributions. *Id.* As a result, Reliant owes a principal balance on the Settlement Agreement of $253,460.73, plus

reinstated liquidated damages of $104,522.82. Defendants owe the Funds a total of $357,983.55 for Reliant's default under the Settlement Agreement.

As for Reliant's required monthly contributions, it failed to make contributions on behalf of its employees for November and December 2024. *Id.* at 4. According to the reports that Reliant submitted, the Funds have calculated that Reliant owed contributions in the amount of $140,546.50 for these months. *Id.* In addition, Reliant failed to make the required contributions due for the months of January and February 2025, and also failed to submit the required reports for these months. *Id.* In order to project the amount of delinquent contributions for January and February 2025, the Funds used the formula provided in the Trust Agreements for when an employer fails to submit the required reports. *Id.* With this formula, the Funds projected the delinquency for these months as $141,579.45. *Id.* at 4-5. The Funds also seek interest and liquidated damages for Reliant's late contributions. *Id.* at 5.

Accepting as true the unchallenged allegations of the Complaint, along with the evidence that the Funds submitted in connection with its Motion to show that Reliant was bound by the terms of the CBA, Trust Agreements, the Guidelines and the Settlement Agreement and Promissory Note, I find that the Funds have established Reliant's liability for its failure to make timely reports and pay timely contributions required by the CBA, the Trust Agreements, and the settlement documents. I further find that Curtis is jointly and severally liable with Reliant for the amounts it owes to the Funds for its breach of the Settlement Agreement and for the unpaid contributions, liquidated damages, interest, attorney's fees, and costs that Reliant owes the Funds.

### C.     Damages

Having determined that the Funds have established Reliant's liability, it is now appropriate to determine the damages to which the Funds are entitled. The damages the Funds seek in their

6

Motion are appropriate under Rule 54(c) so long as "the record supports the damages requested."

*See Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3

(D. Md. Apr. 16, 2010). Here, the Funds have provided sufficient evidence to support their claim

for damages in the amount of $712,738.25.

In support of their claim for damages, the Funds rely on the Declaration of Anna E.

Bosmans, the Fund Administrator of the Funds. ECF No. 13-4. As explained above, I find

Defendants owe the Funds a total of $357,983.55 for Reliant's default under the Settlement

Agreement. In addition, Defendants owe the Funds for the required contributions they failed to

make after the Settlement Agreement was executed. Ms. Bosmans explains that the Trust

Agreements provide that when an employer fails to make its required contributions and submit the

required report forms, the Funds are authorized to project the delinquency amount using a formula:

> Where an Employer is two or more months delinquent in making the contributions required on behalf of his Employees and has not submitted the required documents showing the Employees who worked for him and the hours worked, the Trustees may project as the amount of the delinquency the greater of (a) the average of the monthly payments or reports submitted by the Employer for the last three (3) months for which payments or reports were submitted, or (b) the average of the monthly payments or reports submitted by the Employer for the last twelve (12) months for which payments or reports were submitted.

ECF No. 13-8 at 25-26; *see also* ECF No. 13-4 at 4.

Using this formula, the Funds calculated Reliant's average delinquent monthly

contributions for January and February 2025 to be $141,579.45. ECF No. 13-4 at 4. In addition to

the projected delinquent contributions, Reliant owes the Funds for its reported delinquent

contributions for November and December 2024, which are $140,546.50.

The Trust Agreements and the Guidelines require employers who are late making

contributions to pay liquidated damages and interest. ECF Nos. 13-8 at 24 & 13-4 at 5. Because

Reliant is delinquent in making its contributions for November 2024 through February 2025, the

Funds calculate that Reliant owes additional liquidated damages in the amount of $51,016.26, plus interest from the date of delinquency through the date of payment. The Funds have calculated the interest owed through September 15, 2025 as $19,277.25. ECF No. 13-1 at 2.

The Funds also seek an award of attorney's fees and costs, which are available in ERISA cases, 29 U.S.C. §1132(g)(2), and which are allowed under the Trust Agreements and Guidelines. *See* ECF No. 13-1 at 2.

When a court enters judgment for the plaintiff in an ERISA action for a plan to recover unpaid contributions, it "shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." *Id*. In calculating an award of attorney's fees, the court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). The Fourth Circuit has stated that a court's

> discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009); *see also International Painters and Allied Trades Industry Pension Fund v. Shoemaker*, No. ELH-24-3575, 2026 WL 1238546, at *10 (D. Md. May 6, 2026). Appendix B to this Court's Local Rules ("Rules and Guidelines for Determining Attorneys' Fees in Certain Cases," hereinafter "Appendix B Guidelines") is also relevant. The Court "recently updated its Guidelines Regarding Hourly Rates in the Local Rules[.]" *Schrider v. Devlin Contracting & Maint., Inc.*, BAH-24-2978, 2026 WL

110330, at *4 (D. Md. Jan. 14, 2026). The Appendix B Guidelines now provide the following

guidance for hourly rates:

> Reasonable hourly rates should be determined by the Court using declarations, affidavits, stipulations by the parties, or other evidence. A useful guideline for hourly rates may be provided by the Fitzpatrick Matrix[ ] as adjusted annually, with a reduction of 5% to 20% (to reflect differences between the legal markets in Washington, D.C. and Maryland).

*Shoemaker*, 2026 WL 1238546, at *10 (quoting Appendix B Guidelines § 3).

The Funds rely on the Declaration of Charles W. Gilligan to support their request for an

award of attorney's fees and costs. ECF No. 13-15. Mr. Gilligan states that he has been a member

of the bar since 1986. He charged an hourly rate of $387. And he charged an hourly rate of $150

for paralegal work. I find that these hourly rates are reasonable under the Guidelines and under the

circumstances of this case. Mr. Gilligan spent 7.75 hours working on this case, including time

billed under the paralegal rate, and I find that this time is reasonable. I recommend that attorney's

fees be awarded to the Funds in the amount of $1,340.25.

The Funds also incurred $405 for the filing fee and $590 for the private process server fee.

I recommend that the Funds be awarded costs in the amount of $995.

In summary, I recommend that the Court grant the Funds' Motion for Default Judgment

(ECF No. 13), enter judgment in favor of the Funds and against Defendants Reliant Fire Protection

LLC and Jeffrey W. Curtis. I recommend that the Court award $712,738.25 in damages to the

Funds, and against Reliant and Curtis, jointly and severally, plus interest at the rate of 12% *per*

*annum*[2] on the unpaid contributions through the date of payment, calculated as follows:

$357,983.54    Settlement principal and reinstated liquidated damages

$282,125.95    Delinquent contributions

---

[2] This is the interest rate specified in the Trust Agreements and Guidelines.

| | |
|---|---|
| $51,016.26 | Liquidated damages |
| $19,277.25 | Interest (through September 15, 2025) |
| $995.00 | Costs |
| $1,340.25 | Attorney's fees |
| **$712,738.25** | **Total** |

## III.   CONCLUSION

For the reasons set forth above, I recommend that the Court grant the Funds' Motion for Default Judgment (ECF No. 13), enter default judgment in favor of the Funds and against Defendants Reliant Fire Protection LLC and Jeffrey W. Curtis, and award damages to the Funds in the amount of $712,738.25, plus interest at the rate of 12% *per annum* on the unpaid contributions through the date of payment.

The Clerk of Court shall mail a copy of this Report and Recommendation to Defendants Reliant Fire Protection LLC and Jeffrey W. Curtis.

Objections to this Report and Recommendation must be served and filed within 14 days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

May 14, 2026
Date

         /s/
Timothy J. Sullivan
Chief United States Magistrate Judge